UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND

ROSHANA A.,[1]

        Plaintiff,

    v.

COMMISSIONER,
Social Security Administration,

        Defendant.

Case No. 3:21-cv-00399-YY

OPINION AND ORDER

YOU, Magistrate Judge.

Roshana A. seeks judicial review of the final decision by the Commissioner of Social Security (Commissioner) denying her application for disability insurance benefits under Title II of the Social Security Act (the Act), 42 U.S.C. §§ 401-433. This court has jurisdiction to review the Commissioner's final decision pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Because substantial evidence supports the ALJ's finding that plaintiff was not disabled, the decision is AFFIRMED.

**PROCEDURAL HISTORY**

Plaintiff, who was born in 1956, filed claims in 2018 for disability insurance benefits under Title II and for supplemental security income (SSI) benefits under Title XVI. Plaintiff

---

[1] In the interest of privacy, this decision uses only the first name and the initial of the last name of plaintiff and any of plaintiff's immediate family members.

Page 1 - OPINION AND ORDER

alleged disability because of schizophrenia, degenerative disc disease of the cervical spine, and degenerative joint disease of the left wrist.

As to plaintiff's claim for SSI benefits, the Commissioner determined, based on a consulting psychologist's review of plaintiff's medical records, that plaintiff was disabled by schizophrenia with an onset date of January 17, 2018. Tr. 76. Plaintiff's SSI benefits are not at issue here.

As to plaintiff's claim for disability insurance benefits, she initially alleged an onset date of June 1, 2005, but later amended the onset date to January 1, 2009. Tr. 16. Plaintiff's "date last insured" is December 31, 2011, so the period at issue is from January 1, 2009, to December 31, 2011.

After plaintiff's application for disability insurance benefits was denied initially and on reconsideration, administrative law judge (ALJ) Elizabeth Watson held a hearing in July 2019. The ALJ heard testimony from plaintiff; Dr. Nancy Winfrey, a psychologist and impartial medical expert; and Richard Hincks, a vocational expert. Tr. 36-68. In September 2019, the ALJ issued a decision finding plaintiff not disabled. Tr. 104-10.

In June 2020, the Appeals Council granted plaintiff's request for review and remanded the case to the ALJ to address two statements submitted by plaintiff's daughters; to further evaluate plaintiff's alleged symptoms; and to further consider plaintiff's maximum residual functional capacity. Tr. 117-18.

On remand, the ALJ held a second hearing in October 2020. Tr. 26-35. The only witness was a vocational expert, Hanoch Livneh. In her second decision, issued November 17, 2020, the ALJ again found plaintiff not disabled. Tr. 13-20. The Appeals Council denied review. The ALJ's 2020 decision is the Commissioner's final decision subject to this court's review.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if it is based on proper legal standards and supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, ___ U.S. ___, 139 S. Ct 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Substantial evidence . . . is 'more than a mere scintilla.' It means--and means only--'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Consolidated Edison*, 305 U.S. at 229) (citation omitted).

In reviewing the Commissioner's decision, this court must weigh the evidence that supports and detracts from the ALJ's conclusion and "'may not affirm simply by isolating a specific quantum of supporting evidence.'" *Garrison v. Colvin*, 759 F.3d 995, 1009-10 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)). When the evidence is susceptible to more than one rational interpretation, the court must uphold the Commissioner's decision if it is "supported by inferences reasonably drawn from the record." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted).

## THE ALJ'S FINDINGS

The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine whether a claimant is disabled, the ALJ uses a five-step sequential inquiry. *See* 20 C.F.R. § 404.1520.

Here, at step one, the ALJ found that plaintiff had not engaged in substantial gainful activity from January 1, 2009, through the date she was last insured, December 31, 2011. Tr. 16.

At step two, the ALJ found plaintiff had the following medically determinable impairments: degenerative disc disease of the cervical spine; degenerative joint disease of the left wrist; schizophrenia; and a delusional disorder. Tr. 16. The ALJ found, however, that plaintiff's medically determinable impairments were not severe, and therefore did not proceed with the remaining steps in the sequential analysis. Tr. 16, 20.

As to plaintiff's mental impairments, the ALJ relied on the testimony of independent medical expert Dr. Winfrey. Dr. Winfrey testified that during the relevant period, "there is no medical evidence to support functional limitations due to the claimant's mental limitations." Tr. 17. Although plaintiff had been diagnosed with a delusional disorder and hospitalized for psychosis in 2005, "there was a subsequent break in treatment, and records note the claimant resumed working in 2006 and 2007." Tr. 17.[2] The ALJ stated, "Dr. Winfrey also noted that the evidence does not document mental health treatment again until well after the date last insured." Tr. 17. The ALJ concluded that "the evidence does not support a finding that the claimant has severe mental impairments during the period under review." Tr. 17.

As required by the Appeals Council, on remand the ALJ addressed the statements of plaintiff's daughters. Tr. 19. The two statements focus on plaintiff's mental impairments. Tr. 379-80 (statement of Raihana A.); Tr. 385-86 (statement of Deanna A.).[3] The ALJ found that

---

[2] Dr. Ben Kessler, the consulting psychologist who found plaintiff was disabled by her mental impairments as of January 2018, noted that plaintiff had a history of "schizophrenia since 2005," but "went several years w/o txmt or medication for MH impairments." Tr. 74.

[3] Deanna A. states that plaintiff "has become very slow, fragile and weak and has difficulty lifting more than 10 pounds," and "tires quickly and sleeps throughout the day." Tr. 385-86. The paragraph in Deanna A.'s statement about plaintiff's weakness and lack of stamina, taken in

the daughters' statements were "less persuasive than the initial and reconsideration State agency determinations and the opinion of the impartial medical expert," noting that these opinions were from "acceptable medical sources who reviewed the entire record from the period at issue." Tr. 19-20. The ALJ found that because the daughters' statements were not corroborated by the medical and opinion evidence, the statements "on their own do not establish the presence of a severe medically determinable impairment during the period at issue." Tr. 20.

As to plaintiff's physical impairments, the ALJ found plaintiff had "a history of degenerative disc disease of the cervical spine, and left wrist degenerative joint disease." Tr. 17. The ALJ noted that in October 2008, plaintiff broke her left elbow in a bicycle accident, but the medical evidence did not suggest functional limitations. Tr. 17. The ALJ also noted that plaintiff had been in a motor vehicle accident in June 2010, and tests "showed marked degenerative disc disease at C5-6 and C6-7, and mild degeneration at C4-5." Tr. 18. The ALJ stated, "Physical therapy notes noted limited range of motion in the cervical spine that would improve with consistent performance of physical therapy exercises." Tr. 18. The ALJ noted that a subsequent examination by a physical therapist found plaintiff "able to sit, lie, and ambulate without signs of distress." Tr. 18. Plaintiff later "stopped going to physical therapy and was discharged as a result." Tr. 18.

The ALJ found no physical or mental impairments or combination of impairments that significantly limited plaintiff's ability to perform basic work-related activities for twelve consecutive months during the relevant period. Tr. 16. The ALJ therefore found plaintiff not disabled.

---

context, appears to describe plaintiff's condition in 2019, when Deanna A. wrote the statement, rather than 2009-2013.

**DISCUSSION**

Plaintiff contends that the ALJ improperly found that she did not suffer from "a severe medically determinable physical or mental impairment" for a continuous period of twelve months. 20 C.F.R. § 404.1520(a)(4)(ii). In her briefs in this court, plaintiff argues that her physical impairments were severe. She does not challenge the ALJ's finding that her mental impairments were not severe during the relevant period.

**I.     Plaintiff Has Not Waived Her Challenge to the ALJ's Physical Impairment Finding.**

The Commissioner argues that "Plaintiff waived any claim of a severe physical impairment by not presenting such allegations to the ALJ." Def.'s Br. 5, ECF No. 17. Defendant cites *Greger v. Barnhart*, 464 F.3d 968, 973 (9th Cir. 2006), as support. In *Greger*, the plaintiff argued on appeal that the ALJ "erred in finding his psychological problems not severe when the VA had rated him 30% disabled due to PTSD and that the ALJ failed to develop the record by not ordering a consultative psychological evaluation." *Id.* The Ninth Circuit held that the plaintiff had waived the PTSD issues "because he did not raise them before the district court." *Id.*

Here, because plaintiff raises the physical impairment issue in her briefs filed in this court, *Greger*'s holding does not bar plaintiff from raising the issue. Furthermore, although the ALJ and the parties focused primarily on plaintiff's mental impairments, the record includes evidence of physical impairments, which the ALJ addressed in her decision. Tr. 17-18. Therefore, plaintiff has not waived her claim that she had severe medically determinable physical impairments during the relevant period.

**II.     Substantial Evidence Supports the ALJ's Finding on Plaintiff's Physical Impairments.**

In arguing that the ALJ erred in finding that she did not suffer from severe physical impairments, plaintiff cites medical records documenting treatment she received for injuries suffered in accidents in 2008 and 2010. Pl.'s Opening Br. 5-7, ECF No. 15. "[O]nce a claimant has shown that he suffers from a medically determinable impairment, he next has the burden of proving that these impairments and their symptoms affect his ability to perform basic work activities." *Edlund v. Massanari*, 253 F.3d 1152, 1159-60 (9th Cir. 2001). "An impairment is not severe if it is merely 'a slight abnormality (or combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities.'" *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (quoting S.S.R. No. 96–3(p) (1996)). The Ninth Circuit has characterized step two as "a de minimis screening device used to dispose of groundless claims." *Id.* at 687.

**A.     2008 Bicycle Accident**

Plaintiff fell off her bicycle in September 2008, before the alleged disability onset date of January 1, 2009. Plaintiff injured her face and her left shoulder, elbow, and wrist. The ALJ observed that examinations noted tenderness in plaintiff's left arm after her elbow healed, and that plaintiff complained of difficulty lifting, grasping items, and opening bottles with her left hand. Tr. 17. The ALJ found, however, that the physical examinations "did not suggest functional limitations." Tr. 17. During a physical therapy appointment in August 2010 to treat injuries suffered in the May 2010 motor vehicle accident, plaintiff reported "no limitations prior to MVA; no pain except for occasional L knee pain with weather changes following surgery ~23 years ago." Tr. 660. About a year after the relevant period, in April 2013, plaintiff complained of left wrist pain, with a gradual onset, noting that she had "been doing lots of crocheting lately"

and "denied numbness, tingling, weakness." Tr. 729. The April 2013 report does not mention the 2008 wrist injury as a factor in plaintiff's left wrist pain. Therefore, substantial evidence supports the ALJ's finding that the medical evidence did not show severe functional limitations caused by the left wrist injury.

    B.    **2010 Motor Vehicle Accident**

On May 31, 2010, plaintiff was rear-ended while driving her car. Tr. 680. On June 20, 2010, Dr. Tom Garges, M.D., reported that plaintiff said "she just felt hot the first day [of the accident] without tingling or pain. She then felt pain and was seen at [Providence] the following day." Tr. 648. Plaintiff mentioned "tingling (heaviness)" in her left ring and middle fingers, pain in her lower cervical spine, no range of motion in her neck, pain in her left wrist, and pain in her right knee. Tr. 648. X-rays showed no fractures, mild degenerative disc disease at C4-5, and more serious degenerative disc disease at C5-6 and C6-7. Tr. 508-15. Plaintiff was prescribed Flexiril as needed for muscle spasms. Tr. 649-50. Plaintiff was also prescribed Motrin for pain. Tr. 657, 683. The record does not indicate that plaintiff was prescribed medication stronger than Motrin for pain.

On June 30, 2010, plaintiff received a physical therapy evaluation. Tr. 648-55. She reported headaches and knee pain, as well as intermittent numbness in her cheeks, left forearm, and left hand. Tr. 651.

On July 28, 2010, plaintiff was examined by Dr. Jenny Pompilio, M.D., for "persistent neck and knee problems." Tr. 656. Plaintiff reported headaches, but said "[n]othing is worse overall." Tr. 656. She had stopped wearing a sling for her left arm, reporting "still some aching but better overall." Tr. 656. Dr. Pompilio stated that plaintiff "still has multiple aches and

pains" following the accident, and that it was "hard to assess true acuity; overall appears to be doing better without current radicular signs." Tr. 657.

On August 9, 2010, plaintiff was evaluated by a physical therapist. Tr. 660-63. Plaintiff reported pain in her neck, knees, and other areas. The physical therapist stated, "Though pt rates her pain as 8-10/10, she demonstrates no signs of distress in the clinic." Tr. 662-63. The physical therapist stated that plaintiff's neck and knee mobility would improve with continued physical activity and exercise, including a recommended home exercise program.

On August 23, 2010, plaintiff had another physical therapy appointment, complaining of headaches and pain in multiple areas. Tr. 666-67. Like plaintiff's previous appointment, a different physical therapist observed that "Pt able to sit, lie, and ambulate without signs of distress." Tr. 666. The physical therapist noted that plaintiff's range of cervical motion "has improved in all directions except for flexion and extension." Tr. 667. Plaintiff was able to demonstrate the assigned exercises correctly without an increase in pain. The physical therapist noted that plaintiff's limited range of motion in her neck and the strength of her cervical stabilizers "should improve with consistent performance" of her home exercises. Tr. 667. The physical therapist further stated that plaintiff's bilateral leg weakness "should also improve with increased physical activity and exercise. Pt will likely need continued reassurance to progress with PT due to reported pain intensity and behaviors." Tr. 667.

Plaintiff saw a physical therapist again on September 9, 2010. Tr. 671-74. The physical therapist observed that plaintiff was able to sit, lie, and ambulate with stiffness, and her movements were slow and deliberate. Tr. 671.

Plaintiff next saw a physical therapist on September 23, 2010. Tr. 675-77. The physical therapist observed that plaintiff was "able to sit, lie, and ambulate without signs of overt distress

Page 9 - OPINION AND ORDER

but is guarded with neck movements." Tr. 676. The physical therapist noted plaintiff's poor posture while sitting, and emphasized to plaintiff the importance of proper posture. Tr. 677. The physical therapist stated that plaintiff's knee pain had improved, and that her neck pain was "only symptomatic with L motions and is no longer globally painful or inflammatory in nature." Tr. 677.

Plaintiff returned to the physical therapist on November 1, 2010. Tr. 680-81. The physical therapist observed that plaintiff was "able to sit, lie and ambulate without signs of distress." Tr. 680. The therapist noted that although plaintiff continued to describe her pain in the upper range of the scale, "her cervical ROM and strength have improved." Tr. 681. Plaintiff also showed improvement in her leg strength. "Functional mobility is gradually progressing, and symptoms appear to be stable at this time." Tr. 681.

Plaintiff did not receive physical therapy again until March 4, 2011. Tr. 686-89. She complained chiefly about neck pain. Tr. 686. She reported following a home exercise program including the use of a treadmill, bike, and swimming pool. She was taking Flexeril, a reduced dose if needed at bedtime, and Motrin, 800 mg. with food. Tr. 686. The physical therapist stated that plaintiff appeared to have no limitations that would influence the length of treatment. Tr. 689.

At plaintiff's next physical therapy appointment on April 12, 2011, she reported that "soreness in neck is improved, much better. She notes neck discomfort at hours of sleep. She also notes improved neck ROM." Tr. 691. At physical therapy appointments on April 20 and April 27, 2011, plaintiff reported shoulder stiffness, possibly from using a pulley during exercises. Tr. 693, 695. At physical therapy appointments on June 1 and June 22, 2011, plaintiff

reported no improvement, with continued pain and decreased range of movement in her shoulder and neck. Tr. 699, 701.

Plaintiff did not attend her scheduled physical therapy appointment on June 29, 2011. She did not have any more physical therapy appointments during the relevant period. In January 2012, a physical therapist stated that plaintiff was "considered self-discharged and will need new referral to return to PT dept." Tr. 453.

Plaintiff received an annual physical examination in July 2012. Tr. 704-09. The examination was normal, with the physician describing plaintiff's neck as "supple." Tr. 707. Plaintiff did not complain about physical impairments.

Substantial evidence supports the ALJ's finding that plaintiff's physical impairments were not severe during the relevant period. As the ALJ noted, "physical health records note some impairments, but also show inconsistent treatment and no evidence of lasting functional limitations." Tr. 19. During several appointments, physical therapists found plaintiff's lack of distress during examinations undermined her complaints of severe pain. Plaintiff was not prescribed pain medication stronger than Motrin.

By April 2011, plaintiff reported improvement in her physical condition, and she completely stopped physical therapy treatment in June 2011, about a year after the motor vehicle accident. When she returned for an annual physical examination in July 2012, neither she nor the examining physician mentioned physical impairments. In addition to considering plaintiff's treatment records, the ALJ also properly relied on the opinions of state agency medical consultants Thomas Davenport, M.D., and Neal Berner, M.D., who concluded there was insufficient evidence to evaluate plaintiff's physical impairments before the date last insured, December 31, 2011. Tr. 85, 96.

Page 11 - OPINION AND ORDER

As the Ninth Circuit has explained, "the key question is not whether there is substantial evidence that could support a finding of disability, but whether there is substantial evidence to support the Commissioner's actual finding that claimant is not disabled." *Jamerson v. Chater*, 112 F.3d 1064, 1067 (9th Cir. 1997). "When evidence reasonably supports either confirming or reversing the ALJ's decision, we may not substitute our judgment for that of the ALJ." *Batson v. Commissioner*, 359 F.3d 1190, 1196 (9th Cir. 2004). Thus, substantial evidence supports the ALJ's finding that plaintiff's physical impairments were not severe during the relevant period.

### III.   Plaintiff's Mental Health Impairments

In her briefs to this court, plaintiff does not challenge the ALJ's finding that her mental impairments were not severe during the relevant period. In any event, substantial evidence supported the ALJ's finding on plaintiff's mental impairments. Plaintiff did not receive mental health treatment, or take medication for mental illness, during the relevant period or for several years afterward. In reports of physical therapy appointments and examinations during the relevant period, there is no indication that plaintiff had difficulty understanding the treatment was she receiving.[4] *See, e.g.*, Tr. 662-63 (August 9, 2010 physical therapy report noting plaintiff "verbalizes understanding" of physical therapy; finding "no barriers" to learning); Tr. 681 (November 1, 2010 physical therapy report noting plaintiff "verbalized and demonstrated understanding" of the home exercise program; no barriers to learning); Tr. 689 (March 4, 2011 physical therapy appointment, finding no barriers to learning and stating plaintiff "has multiple learning styles").

The ALJ also relied on the opinion of Dr. Winfrey, the medical consultant. The ALJ found her expert opinion to be "specific, "cited to the record," and "consistent with the evidence

---

[4] A physical therapy report on September 23, 2010 described Plaintiff as a "circuitous historian."

Page 12 - OPINION AND ORDER

as a whole." Tr. 19. Dr. Winfrey noted that plaintiff had returned to work by mid-2006, and that there was no evidence of treatment for mental impairments until late 2017. Tr. 44. The ALJ also properly relied on the state agency medical consultants, who found insufficient evidence to evaluate plaintiff's mental limitations during the relevant period. Tr. 19. The ALJ properly discounted the statements of plaintiff's daughters, relying on the medical source opinions and plaintiff's treatment record during the relevant period. *See Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001) (ALJ may discount lay testimony about a plaintiff's symptoms by giving reasons germane to each witness for doing so). Therefore, substantial evidence supports the ALJ's finding that plaintiff did not have a severe mental impairment during the relevant period.

## CONCLUSION

The decision of the Commissioner is AFFIRMED.

DATED July 20, 2022.

/s/ Youlee Yim You
Youlee Yim You
United States Magistrate Judge